IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ANDY GONZALEZ,                        §
                                      §
                    Petitioner,       §
                                      § Civil Action No. 3:07-CV-1533-D
VS.                                   §
                                      §
D. BERKEBILE, Warden,                 §
                                      §
                    Respondent.       §

MEMORANDUM OPINION
AND ORDER

In this petition for a writ of habeas corpus under 28 U.S.C. § 2241, Andy Gonzalez ("Gonzalez"), a federal prisoner, seeks habeas relief restoring lost good-time credits imposed for his possession of a "dangerous chemical," in violation of § 104 of the Bureau of Prisons' Prohibited Acts Code ("Code"), 28 C.F.R. § 541.13, Table 3.[1] The magistrate judge recommends that the petition be denied. Following *de novo* review, the court concludes that the record contains no evidence that the chemical Gonzalez possessed was a "dangerous chemical," within the meaning § 104. Accordingly, the court grants the petition and orders that the Bureau of Prisons ("BOP") redetermine Gonzalez's punishment based only on a "Moderate"-level violation, not a "Greatest"-level violation.

---

[1]Under 28 C.F.R. § 541.13(a), the four categories of prohibited acts are identified in Table 3, entitled, "PROHIBITED ACTS AND DISCIPLINARY SEVERITY SCALE."

I

Gonzalez, an inmate at FCI-Seagoville, Texas, was disciplined for making and using a homemade welding kit inside his locker to repair his radio. The welding kit was observed producing a four-inch flame. After conducting a hearing, a disciplinary hearing officer ("DHO") found that Gonzalez had violated Code § 305 based on his "Possession of anything not authorized for retention or receipt by the inmate, and not issued to him through regular channels," which is designated as a "Moderate"-level offense by the Code and warrants "Moderate"-level punishment.[2] In his petition, Gonzalez does not challenge this finding. The DHO also found that Gonzalez violated § 104 of the Code, "Possession, manufacture or introduction of a . . . dangerous chemical," based on his "Possession of a Dangerous Chemical" to produce the four-inch flame using the welding kit. Possession of a "dangerous chemical" is an offense of "Greatest"-level severity under the Code. The discipline imposed on Gonzalez was the loss of 41 days of good-time credits and a loss of commissary privileges for a period of 60 days.[3] After exhausting his administrative remedies, Gonzalez challenges in this habeas petition the loss of 41 days of good-time

---

[2] Punishments are rendered according to the designated severity of the offense. *See* 28 C.F.R. § 541.13(a) and Table 3.

[3] The sanction also included 60 days of disciplinary segregation, which was suspended. Gonzalez faces the prospect of this discipline, however, if he commits a new infraction within a specified period.

credits.

Insofar as relevant to today's decision, Gonzalez maintains that the chemical he used in the welding kit was baby oil purchased from the prison commissary, not a "Dangerous Chemical" within the meaning of Code § 104. Defendant D. Berkebile ("Warden Berkebile"), the prison warden, argues in response that the type of substance used—whether baby oil or something else—is irrelevant, because Gonzalez used it in a dangerous manner (i.e., to create a four-inch flame). The magistrate judge recommends that Gonzalez's petition be denied.

II

It is well settled that an inmate cannot be deprived of good-time credits without due process of law. *See, e.g., Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). Accordingly, where prisoners "can only lose good-time credits if they are guilty of [certain] misconduct, the determination of whether such behavior has occurred [is] critical." *Id.* An inmate "has a fundamental right not to be deprived of good-time credits as punishment for conduct that had not been prohibited." *Wallace v. Nash*, 311 F.3d 140, 143 (2d Cir. 2002) (citing *Coffman v. Trickey*, 884 F.2d 1057, 1060 (8th Cir. 1989)).

In this case, the dispositive issue is whether Gonzalez possessed a "Dangerous Chemical," in violation of § 104, which proscribes the "[p]ossession . . . of a gun, firearm, weapon,

sharpened instrument, knife, *dangerous chemical*, explosive or any ammunition." 28 C.F.R. § 541.13 (emphasis added). The Second Circuit addressed a similar question in *Wallace*, where the issue was whether possession of a pool cue (ordinarily permissible under prison rules) could be possession of a "weapon," within the meaning of § 104, if the cue was used to attack another prisoner. *See Wallace,* 311 F.3d at 142, 144. The Second Circuit concluded that it could not, explaining that "every object or substance specified in § 104 is inherently dangerous," and that "the inclusion of th[e] word ['weapon'] in a list in which every specified item is inherently dangerous leads us to infer that the drafters intended the word . . . to [refer to] objects that may be considered weapons without regard to their use." *Id.* Distinguishing the *possession* of a dangerous item from the *use* of an item in a dangerous way, the court concluded that § 104 prohibited the former activity, but not the latter:

> The two words ["possession" and "use"] are not synonymous, and where the prohibition is against a manner of using an object that may lawfully be possessed, the Code expressly prohibits such use [elsewhere]. [citing examples] . . . [T]he Prohibited Acts Code [thus] distinguishes between prohibitions against possession and prohibitions against use. Section 104 mentions only possession, and if a pool cue were a "weapon" within the meaning of PAC § 104 as drafted, its possession by Wallace would have been punishable the moment the cue was given to him by the guard. The punishment imposed on Wallace, however, was not for possession, but rather for his use of the pool cue to strike

> another. That punishment was not properly
> imposed under § 104, which does not mention
> use.

*Id.* at 144-45.

The court finds *Wallace*'s reasoning to be persuasive in the context of a "dangerous chemical" as well. To have committed a violation of § 104, Gonzalez must have possessed a chemical that was inherently dangerous and would have warranted punishment the moment he possessed it. *See id.* at 145. Possession of an item that does not fall within the definition of "dangerous chemical" does not violate § 104, regardless how dangerously the item is used. Punishment for use of such an item must be based on another provision of the Code.

III

Although Gonzalez contends that the flame that emanated from his welding kit was produced by baby oil that he purchased from the prison commissary, he cannot rely on this argument to establish a right to habeas relief. The BOP Regional Director rejected Gonzalez's assertion, stating, in relevant part: "You contend the chemical you possessed was baby oil. However, we have reviewed your contention with Regional safety staff, and have concluded that baby oil in its pure form does not possess the flammable qualities to create a flame, as the reporting officer observed." Hab. Pet. Ex. C. This conclusion is supported by some evidence and cannot be disturbed. *See, e.g., Superintendent, Mass. Corr. Inst., Walpole,*

*v. Hill,* 472 U.S. 445, 455-56 (1985) (holding that disciplinary decisions must stand if "there is any evidence in the record that could support the conclusion reached by the disciplinary board").

But despite Gonzalez's inability to rely on this argument, the court can find no indication in the record that prison officials attempted to identify the chemical that Gonzalez used to fuel his welding kit. Rather, they based their disciplinary decision on the premise that *any* product capable of producing a four-inch flame was inherently dangerous and therefore qualified as a "dangerous chemical." The Warden takes this position in this court, Resp. Ans. and Mot. to Dis. or Summ. J. 10-11, and the magistrate judge was persuaded by this argument as well, Mag. J. Rec. 2-3. The record does not support this premise. There is no evidence, for example, that all materials that Gonzalez could have used to fuel a flame are inherently dangerous.

Accordingly, because the record does not support the finding that Gonzalez possessed a "dangerous chemical," as opposed to a substance that he used in a dangerous manner, the court holds that he is entitled to have his punishment redetermined based only on a "Moderate"-level violation under § 305, not a "Greatest"-level violation under § 104.

IV

In sum, the evidence does not support Gonzalez's being punished for possessing a "dangerous chemical," an offense of "Greatest" severity under the Code that is listed alongside murder (§ 100), rape and assault (§ 101), escape from prison (§ 102), arson (§ 103), and rioting (§ 105). *See id.* To support such a punishment, there must be evidence that the chemical he possessed was inherently dangerous, and there is no such proof in the administrative record. Because Gonzalez possessed unauthorized materials, however, he was subject to punishment under § 305 for "Possession of anything not authorized for retention . . . by the Inmate." 28 C.F.R. § 541.13, Table 3.

The court cannot determine what part of the punishment imposed by the BOP is based only on a violation of § 305. Under Table 3, some good-time credits can be forfeited for "Moderate"-level violations, although a loss of 41 days of good-time credits in this case appears to fall within the range available only for a "Greatest"-level violation. The court therefore grants Gonzalez's petition to the extent of ordering the BOP to redetermine his punishment based only on a violation of § 305.

* * *

Gonzalez's petition for writ of habeas corpus is granted, and within 60 days of the date the court's judgment is entered, the BOP must redetermine Gonzalez's punishment based only on a violation of § 305.

**SO ORDERED.**

April 10, 2008.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE